IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

JAMAL MUNNERLYN, and
ROSCOE STANLEY PRODUCTIONS, INC.

     Plaintiffs,

v.

WILLIAM CASTRO,
UNIQUE AUTOSPORTS SOUTH, INC., and
FACIO PRODUCTIONS, INC.

     Defendants.

_____/

## COMPLAINT

Plaintiffs, Jamal Munnerlyn ("Munnerlyn") and Roscoe Stanley Productions, Inc. ("Roscoe")(collectively, "Plaintiffs"), through their attorneys, Fox Rothschild LLP, hereby sue Defendants William Castro ("Castro"), Unique Autosports South, Inc. ("Unique Autosports"), and Facio Productions, Inc. ("Facio")(collectively, "Defendants") and allege as follows:

### Parties, Jurisdiction and Venue

1.     Plaintiff, Munnerlyn is an individual residing in the Los Angeles, California.

2.     Plaintiff, Roscoe is a California corporation with its principal place of business located at 1221 S. Alfred Street, Los Angeles, CA 90035.

3.     Defendant, Castro is an individual residing and doing business in Miami-Dade, Florida.

4.     Defendant Unique Autosports is a Florida corporation doing business in Miami-Dade, Florida.

1

5.      Defendant Facio is a New York corporation doing business in in Miami-Dade, Florida.

6.      This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### Factual Background

8.      Munnerlyn is a multi-talented TV host and TV and film producer who has worked as a production assistant and coordinator for the "Grammy Awards," "American Music Awards," "BET Awards," and "Radio Music Awards."

9.      Munnerlyn is also the former co-host, creator, and segment producer of "TV One Access," and a former segment producer for "Access Hollywood."  Munnerlyn has traveled across the globe to interview some the biggest stars in television, film, and music.

10.     Roscoe is a company that specializes in the creation of original programming, strategic brand integration and partnerships, negotiation of TV deals, production (pre and post), and film funding.

11.     Roscoe's current television client roster includes: "Track Live," "Gotti's Way", "Love for Lamman," "Angels + Kings," and "Gyrl Talk."

12.     Roscoe also represents several film and documentary properties, notably: "Hoop Reality," "Bastards of the Party," "Why Play Fair," and "Prey For My Family."

13.     Plaintiffs are informed and believe, and thereon allege, that Castro operates a car customizing and design shop that caters to celebrity clientele.

2

14.     In late January 2009, Plaintiffs and Defendants began having discussions regarding the sale of a television series developed by Castro involving a car customizing and design shop which services celebrity clientele and car enthusiasts entitled, "Unique AutoSports: Miami" (the "Show").

15.     In February 2009, Plaintiffs and Defendants met in Miami, Florida to discuss Defendants engaging Plaintiffs to "shop" the Show to various networks through their extensive contacts.

16.     The parties agreed that, in exchange for the "shopping" services, Defendants would pay Plaintiffs the sum of $1,000.00 per month, although Plaintiffs typically charge $5,000.00 per month (the "Retainer Fee").

17.     Plaintiffs accepted the reduced Retainer Fee because the parties further agreed that in consideration for Plaintiffs securing distribution for the Show, Munnerlyn would receive: (i) an "Executive Producer" credit ("EP Credit") for the Show and (ii) 15% of any monies generated by any products integrated ("Product Placement") in the Show (the "Agreement").

18.     In reliance on the parties' Agreement, Plaintiffs began initiating meetings with various networks in order to secure distribution for the Show.

19.     On June 12, 2009, Plaintiffs contacted Chris Colarossi, Vice President of Business Development, MTV Network, regarding the Show, and by August 6, 2009, Plaintiffs successfully negotiated an agreement with MTV Network ("MTV") whereby MTV agreed to air the Show through its Spike TV division and channel.

20.     On October 14, 2009, as a result of Plaintiffs' promotion and negotiations, Spike TV sent Defendants a contract regarding distribution of the Show on Spike TV.

3

21.     On November 12, 2009, consistent with the Agreement, Spike TV issued a Press Release entitled "'Unique Autosports: Miami' Premieres on Spike TV February 28" wherein Munnerlyn is noted as a producer of the Show.  A true and correct copy of this Press Release is attached as Exhibit "A."

22.     On February 26, 2010, Plaintiffs  learned that Defendants instructed Spike TV to remove the EP Credit, and did not intend to give Munnerlyn the EP Credit for the Show, or fifteen percent (15%) of Product Placement income.

23.     On March 21, 2010, the Show premiered on Spike TV - and despite the Agreement - Munnerlyn was not listed as an Executive Producer.

**COUNT I**
**BREACH OF CONTRACT (DAMAGES)**

24.     Plaintiffs incorporates by reference the allegations in paragraphs 1 through 23 as if set forth at length herein.

25.     On or about September 21, 2009, Plaintiffs and Defendants entered into the Agreement.

26.     Except to the extent excused by Defendants' breach, Plaintiffs diligently performed all the services required of them under the Agreement.

27.     Defendants' failures to give Munnerlyn the EP Credit and provide Plaintiffs fifteen percent (15%) of the Show's Product Placement income constitutes a breach of their contractual obligations.

28.     Defendants' breach is without justification or excuse.

29.     Plaintiffs have been damaged as a result of Defendants' breach by not having received EP Credit for the Show and fifteen percent (15%) of Product Placement income, plus accrued interest.

4

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiffs and against Defendants in an amount of at least $1,000,000.00 plus accrued interest, and to award costs, and other such and further relief as is just and proper.

## COUNT II
## BREACH OF CONTRACT (SPECIFIC PERFORMANCE)

30.     Plaintiffs incorporates by reference the allegations set forth in paragraphs 1 through 23 as if set forth at length herein.

31.     On or about September 21, 2009, Plaintiffs and Defendants entered into the Agreement.

32.     Except to the extent excused by Defendants' breach, Plaintiffs diligently performed all the services required of them under the Agreement.

33.     Defendants' failures to give Munnerlyn the EP Credit and provide Plaintiffs fifteen percent (15%) of the Show's Product Placement income constitutes a breach of its contractual obligations.

34.     Defendants' breach is without justification or excuse.

35.     Plaintiffs have no adequate remedy at law since the Agreement involves the recognition of Munnerlyn as the Executive Producer of a television series, and money damages are presumed inadequate for Defendants' breach.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiff and against Defendants and order Defendants to perform under the Agreement and give Munnerlyn EP Credit for the Show.

## COUNT III
## PROMISSORY ESTOPPEL

36.     Plaintiffs incorporates by reference the allegations set forth in paragraphs 1

5

through 23 as if set forth at length herein.

37.     Pleading in the alternative, if the Agreement is found ineffective and/or unenforceable, then Plaintiffs have a claim for promissory estoppel against Defendants based on the promises contained in the aforesaid Agreement that Munnerlyn would receive EP Credit for the Show and fifteen percent (15%) of Product Placement income.

38.     Defendants made those promises with the expectation that Plaintiffs would reasonably rely upon those promises.

39.     Plaintiffs relied upon these promises to its detriment when Plaintiffs waived eighty percent (80%) of the Retainer Fee.

40.     As a result of Defendants' breach, Plaintiffs  have been damaged by not having received EP Credit for the Show and the fifteen percent (15%) of Product Placement income, plus accrued interest.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiffs and against Defendants in an amount of at least $1,000,000.00 plus accrued interest, and to award costs, and other such and further relief as is just and proper.

## COUNT IV
## QUANTUM MERUIT

41.     Plaintiffs incorporates by reference the allegations set forth in paragraphs 1 through 23 as if set forth at length herein.

42.     Defendants requested certain services from Plaintiffs, which included to "shop" the Show to various networks through their extensive contacts.

43.     Plaintiffs typically charge $5,000.00 per month for such services.

44.     Defendants requested that Plaintiffs perform these services and promised to pay them the reasonable value of such services.

6

LA1 39694v2 04/07/10

45. Plaintiff diligently performed said services for the benefit of Defendants.

46. The fair and reasonable value of these services provided to Defendants are at least $5,000.00 per month.

47. No payment has been made by Defendants to Plaintiffs, and there is owing at least sum of $60,000.00.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiffs and against Defendants in an amount of at least $60,000.00 plus accrued interest, and to award costs, and other such and further relief as is just and proper.

## COUNT V
## DECLARATORY RELIEF

48. Plaintiffs incorporates by reference the allegations in each of the preceding paragraphs as if set forth at length herein.

49. Plaintiffs have suffered damages, and reasonably believe that they will continue to suffer damages arising from the failure of the Defendants to adhere to the Agreement.

50. An actual and justifiable controversy presently exists between Plaintiffs and the Defendants with respect to the existence of the Agreement and Plaintiff's rights under it.

51. Plaintiffs seek a declaration of the rights and obligations of the parties with regard to these issues.

WHEREFORE, Plaintiffs demand declaratory judgment of the rights and obligations of the parties with regard to the Agreement and those issues to be decided in the Courts.

7

## DEMAND FOR JURY TRIAL

52.   Plaintiffs demand a trial by jury on all issues so triable.

FOX ROTHSCHILD LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 835-9600
Facsimile: (561) 835-9602


s/Amy S. Rubin
Amy S. Rubin
Florida Bar Number 476048
arubin@foxrothschild.com
Elliot A. Hallak
Florida Bar Number 762741
ehallak@foxrothschild.com


*Attorneys for Jamal Munnerlyn and
Roscoe Stanley Productions, Inc.*

8